**SO ORDERED.**

**SIGNED April 01, 2008.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____


UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


IN RE:

FIRST SUMMIT GROUP, LLC                              CASE NO. 06-20237

    Debtor                                          Chapter 7
-----------------------------------------------------------------
GSK, LLC, SAMMIE LAFOSSE,
KIM VANDERHOEK, ET AL,

    Plaintiffs

VERSUS                                              ADVERSARY NO. 07-02003

GARY SONNIER, FIRST SUMMIT
GROUP, LLC and WHITNEY
NATIONAL BANK,

    Defendants
-----------------------------------------------------------------
**REASONS FOR DECISION**
-----------------------------------------------------------------

    The present matter comes before the court as a motion for summary judgment filed by Whitney National Bank ("Whitney")

pursuant to Rule 56 of the Federal Rules of Civil Procedure made applicable to the present adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  The court took Whitney's motion under advisement following a hearing on the matter.  After reviewing the arguments of counsel, the parties' briefs, and the relevant authorities, the court **GRANTS** Whitney's motion.

## I.   JURISDICTION

The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334.  The court finds that this is a core proceeding pursuant to the provisions of 28 U.S.C. § 157(b)(2). These Reasons for Decision constitute the court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## II. BACKGROUND

First Summit Group, LLC (the "Debtor") filed a petition for relief under Chapter 11 on July 20, 2006.  The Chapter 11 case was subsequently converted to a case under Chapter 7.  On January 25, 2007, GSK, LLC ("GSK"), Sammie LaFosse, and Kim Vanderhoek (collectively, "Plaintiffs") filed the present adversary proceeding against the Debtor, Gary Sonnier, and Whitney (collectively, "Defendants"). Plaintiffs allege that Defendants fraudulently obtained a subordination of a vendor's lien and privilege held by GSK in connection with a sale of family property.

-2-

The summary judgment record establishes the following undisputed facts. The family property at issue is a tract of land located in Calcasieu Parish, Louisiana (the "Subject Property"). The Subject Property passed by succession to Gary Sonnier, Sammie LaFosse and Beverly Sonnier Fouts in 1977. Beverly Sonnier Fouts subsequently died, and her share of the property passed to Kim Vanderhoek. Vanderhoek's interest in the Subject Property was placed into the Vanderhoek Trust. Sonnier, LaFosse, and the Vanderhoek Trust formed GSK in 1994, and transferred their interest in the Subject Property to GSK. Sonnier, LaFosse, and the Vanderhoek Trust were the sole members of GSK, and Sonnier was appointed sole manager of GSK.

On April 30, 1996, GSK transferred ownership of the Subject Property to First Summit for $5,499,300. The transaction was structured as a credit sale, and GSK retained a vendor's lien on the Subject Property. The documents that memorialized the credit sale and GSK's lien (the "Credit Sale Documents") were executed on April 30, 1996. GSK's vendor's lien was recorded in Calcasieu Parish on May 6, 1996, and was the ranking lien on the Subject Property.

In 1999, First Summit approached Whitney for financing to develop the Subject Property. Whitney agreed to provide financing for the development only if Whitney received a first mortgage on

-3-

the Subject Property. In order to complete the financing deal with Whitney, Gary Sonnier executed a Subordination Agreement on behalf of GSK. This agreement subordinated GSK's lien to Whitney's mortgage. Sonnier also obtained a Unanimous Written Consent of the members of GSK authorizing the Subordination Agreement. Once the financing deal with Whitney was finalized, Whitney's mortgage on the Subject Property was duly recorded in Calcasieu Parish.

Plaintiffs contend that Sonnier was not authorized to execute the Subordination Agreement on behalf of GSK, and that he forged their signatures on the Unanimous Consent. They also contend that Sonnier fraudulently concealed his interest in First Summit, and that he had a conflict of interest with respect to his interest in First Summit and his role as manager of GSK. In this adversary proceeding, Plaintiffs seek a determination that their claims against First Summit are nondischargeable. With respect to Whitney, Plaintiffs seek a declaration that the Subordination Agreement is invalid and that GSK's vendor's lien outranks Whitney's mortgage on the Subject Property. Although Whitney defends the validity of the Subordination Agreement, its primary argument is that, even if the Subordination Agreement is invalid, GSK lost its first lien ranking when it failed to reinscribe its vendor's lien.

### III. DISCUSSION

**A. <u>Summary Judgment Standard</u>**

Rule 56(c) of the Federal Rules of Civil Procedure provides that the movant is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of establishing by affidavit or other competent summary judgment evidence that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law. <u>Hale v. Townley</u>, 45 F.3d 914, 917 (5th Cir. 1995). To survive a Rule 56 motion, the responding party must point to competent summary judgment evidence establishing that there is a genuine issue of material fact that precludes summary judgment in favor of the movant. <u>Matsushite Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 585-86 (1986). However, the non-movant must do more than demonstrate some factual disagreement; the factual issue must be material. In other words, irrelevant or unnecessary facts will not defeat a summary judgment motion even if they are in dispute. See <u>Colin v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995).

-5-

07-02003 - #27   File 04/01/08   Enter 04/01/08 16:25:26   Main Document   Pg 5 of 13

**B. Recordation and Reinscription of Mortgages Under the Civil Code.**

The Louisiana Civil Code provisions governing the recordation and reinscription of mortgages were repealed and re-codified effective July 1, 2006. Given this effective date, the repealed code provisions governing recordation and reinscription were in force when the recordation of GSK's vendor's lien lapsed in April 2006. The applicable code provisions in effect prior to July 2006 were contained in Articles 3328-29, 3333-34, and 3362 (repealed). Articles 3328-29 provided that, with respect to an obligation that matures less than nine years after the date of the document, "the effect of recordation ... ceases ten years after the date of the document." These provisions are now codified in Articles 3357-58. The effect of recordation could be extended for an additional ten years by filing a notice of reinscription under Articles 3333 and 3334, which are now re-codified in Articles 3362 and 3364. Courts have consistently held that the failure to reinscribe a mortgage under the Civil Code causes the mortgage to lose its priority. American Nat'l Ins. Co. v. Heller Financial, Inc., 989 F.2d 854, 586 (5th Cir. 1994); Bank One Louisiana v. Lacobee, 811 So. 2d 164, 168 (La. App. 2nd Cir. 2002); Casey v. National Info. Services, Inc., 906 So. 2d 710, 715-16 (La. App. 1st Cir. 2005).

-6-

**C. Did GSK's Vendor's Lien Lose Priority Over Whitney's Mortgage?**

Applying the Civil Code's recordation and reinscription provisions to the present case, the summary judgment record establishes that the recordation of GSK's lien lapsed in April 2006 when GSK did not file a notice of reinscription. The Credit Sale Documents were executed on April 30, 1996. Based on these documents, the underlying obligation originally matured on April 30, 2001 - - five years from the date that the Credit Sale Documents were executed. The Credit Sale Documents were subsequently amended to extend the maturity date to April 30, 2004 - - approximately eight years after the Credit Sale Documents were originally executed. Based on the applicable provisions of the Civil Code in force at the time, the effect of the recordation of GSK's vendor's lien would have lapsed on April 30, 2006 unless the lien was duly reinscribed. See La. Civ. Code Arts. 3328-34 (repealed). It is undisputed that GSK did not reinscribe its vendor's lien pursuant to Louisiana Civil Code Art. 3362 (repealed). As a result, GSK's 1996 recordation lapsed in April 2006, at which time GSK's vendor's lien lost its priority status *vis-a-vis* Whitney's subsequently recorded mortgage. American Nat'l Ins. Co., 989 F.2d at 856; Bank One Louisiana, 811 So. 2d at 168.

-7-

Plaintiffs advance a number of arguments to support their contention that GSK's lien did not lose its priority status *vis-a-vis* Whitney. First, Plaintiffs contend that the Civil Code's recordation and reinscription provisions merely serve to provide notice to third parties and cannot divest GSK of any substantive rights afforded by its vendor's lien. Plaintiffs are correct that the Civil Code's recordation and reinscription provisions do not address the underlying validity of a lien, and that GSK may still have a valid lien. Plaintiffs' argument, however, confuses lien validity with lien ranking. While the Civil Code does not strip GSK's vendor's lien of its validity, the failure to reinscribe the lien caused the lien to lose its priority ranking.

The <u>American Nat'l Ins</u>. case illustrates the effect of a lapse in recordation under the Civil Code. In that case, the appellant held a first priority mortgage on certain tracts of land. The mortgage was executed and recorded in April 1977, but the appellant never reinscribed its mortgage before the 10-year recordation period lapsed. In September 1979, the appellee was granted a second mortgage on the same property. The appellee duly reinscribed its second mortgage in August 1989. The court held that appellant lost the priority ranking of its lien when it failed

-8-

to reinscribe the lien.[1]  In short, regardless of the underlying validity of GSK's lien, the lien lost its priority ranking *vis-a-vis* Whitney when the recordation of the lien lapsed in April 2006.

Plaintiffs also argue that post-1996 amendments to the original Credit Sale Documents extended the ten year recordation period under the Civil Code.  Although Plaintiffs did not submit any evidence of amendments, Whitney included the amendments in its reply submission. Under the Civil Code, amendments to the original documents will impact the recordation period only if they extend the maturity date of the underlying obligation beyond nine years. See La. Civ. Code Art. 3361 (repealed).  If the maturity date remains less than nine years, the recordation period is ten years measured from the date of the original documents. Nothing in the Civil Code or the relevant case law supports Plaintiffs' position that the 10-year recordation period begins anew with each amendment.  In the present case, the amendments cited by Plaintiffs extended the maturity date, but the extended maturity date was still less than nine years.  Accordingly, under the clear language

---

[1] Plaintiffs argue that <u>American Nat'l Ins.</u> is no longer good law because it was decided prior to earlier amendments to the Civil Code's recordation and reinscription provisions in 1992.  Plaintiffs, however, offer no explanation as to why the 1992 amendments undermine or otherwise invalidate the Fifth Circuit's holding in <u>American Nat'l Ins.</u>, nor do Plaintiffs account for Louisiana case law after 1992 that recognizes the same principles with respect to a lapse in the recordation of a lien.  <u>See</u>, e.g., <u>Bank One Louisiana</u>, 811 So.2d at 168.

-9-

of the Civil Code, GSK's 1996 recordation expired ten years from the date of the original Credit Sale Documents.

Plaintiffs alternatively argue that, even if recordation lapsed in April 2006, the Civil Code's reinscription requirement was "equitably" tolled because of allegedly fraudulent conduct attributed to Defendants. Plaintiffs also contend that they "substantially complied" with the Civil Code's reinscription requirements by filing suit against Sonnier and First Summit in state court prior to the lapse of recordation. Plaintiffs cite no Louisiana or Fifth Circuit case law applying equitable tolling to the Civil Code's recordation and reinscription requirements. To the contrary, the relevant provisions of the Civil Code and the case law applying those provisions undercut Plaintiffs' argument. The Civil Code provisions in effect at the time clearly stated that the reinscription procedures set forth in the Code are "exclusive." La. Civ. Code Art. 3363 (repealed). As a result, courts applying these provisions have rejected equitable grounds for avoiding the impact of a lapse in the recordation of a lien. See Bank One Louisiana, 811 So.2d at 168 (in reversing the trial court, the appellate court noted that "while the trial court tried to resolve this matter with an equitable solution to prevent what it perceived as an unfair result, we find that the provisions of the law dealing with reinscription are clear.").

Furthermore, even if some form of equitable tolling were

-10-

available, Plaintiffs have not come forward with competent summary judgment evidence supporting their allegations that Whitney participated in fraudulent conduct. Based on the summary judgment record, Plaintiffs had no relationship or dealings with Whitney in connection with the First Summit development financing agreement. While Plaintiffs point to evidence in the summary judgment record supporting their allegations of wrongful conduct against Sonnier, Plaintiffs have not come forward with any competent summary judgment evidence supporting fraudulent conduct on the part of Whitney. Even if Whitney knew that Sonnier had an interest in both GSK and First Summit, this knowledge does not rise to the level of fraud. Nor can Plaintiffs successfully "impute" Sonnier's allegdly fraudulent intent to Whitney absent evidence in the record showing some involvement by Whitney in the fraudulent scheme attributed to Sonnier. Simply put, even if Plaintiffs have come forward with summary judgment evidence supporting a fraud claim against Sonnier, they cannot convert a fraud claim against Sonnier into a fraud claim against Whitney based on the summary judgment record before the court.[2]

---

[2] In another variant of their equitable tolling argument, Plaintiffs contend that, if the Subordination Agreement is valid, the agreement prevented them from complying with the reinscription requirements of the Civil Code. Again, the lack of an equitable basis to toll the recordation period is fatal to this argument. Moreover, this argument is inconsistent with Plaintiffs' position that the Subordination Agreement is invalid. In the end, this argument is grounded on allegations that Sonnier breached his duties to GSK by failing to protect GSK's interests.

-11-

Finally, Plaintiffs contend that Whitney's mortgage is defective because of GSK's right of dissolution. Under Louisiana law, a seller has a right of dissolution when the buyer fails to pay the price of a credit sale. See Robertson v. Buoni, 504 So. 2d 860 (La. 1987). Whitney responds by pointing out that Plaintiffs have not asserted a claim for dissolution, nor have they satisfied the requirements for dissolution, including restoration of the portion already paid by the buyer. The court agrees with Whitney in this regard. A cause of action for dissolution is entirely separate and distinct from the issue of lien ranking. Indeed, Plaintiffs' own brief acknowledges that "GSK's right as vendor to a dissolution of the sale for failure of consideration is not dependent upon the existence of any security device...." See Plaintiffs' Brief at 7. Simply put, GSK's right to dissolution is not germane to the ranking of its lien, or how the lapse of the lien's recordation effects its ranking.

## IV. CONCLUSION

In sum, Whitney is entitled to judgment as a matter of law on Plaintiffs' lien ranking claim. This claim is **DISMISSED** with prejudice. Given that GSK's failure to reinscribe is dispositive, the court need not address the parties' arguments pertaining to the

---

As explained above, while this evidence may support a claim against Sonnier, it does not support Plaintiffs' lien ranking claim against Whitney.

-12-

Subordination Agreement. Within 20 days, counsel for Whitney shall submit an order in conformity with the foregoing reasons.

###