RECEIVED
IN LAFAYETTE, LA.
MAY 2 2 2009
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| GSK LLC, SAMMIE LAFOSSE, and KIM VANDERHOEK, | * | CIVIL NO. 2:08-CV-00824 |
| VERSUS | * | JUDGE HAIK |
| GARY SONNIER, FIRST SUMMIT GROUP, and WHITNEY NATIONAL BANK | * | MAGISTRATE METHVIN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REASONS FOR JUDGMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I.   Facts

This case involves an appeal from a judgment of the Bankruptcy Court granting summary judgment in favor of Defendants/Appellees, Gary Sonnier, First Summit Group LLC (hereon "First Summit"), and Whitney National Bank (hereon "Whitney"). The appellants named in this lawsuit are GSK LLC (hereon "GSK"), Sammie Lafosse, and Kim Vanderhoek. Specifically, Appellant seek determination of whether the Bankruptcy Court erred in failing to apply the doctrine of equitable tolling enumerated in *Young v. U.S.*, 535 U.S. 43, 122 S.Ct. 1036, 153 L.Ed.2d 79 (2002).

This appeal centers around a dispute over who has superior title to a certain tract of land in the Lake Charles, Louisiana area. In 1977, ownership of the immovable property at issue

1

passed to Gary Sonnier, Sammie LaFosse, and Beverly Sonnier Fouts in equal undivided shares through the succession of their father. When Beverly Fouts died in 1982, her one-third ownership passed to her daughter, Kim Safriet Vanderhoek. Mrs. Vanderhoek's interest was placed into a trust in 1985, with Gary Sonnier named as the trustee in a duly recorded document. That trust remained in effect until February 10, 2004.

On September 30, 1994, Sonnier organized GSK comprised of himself, Lafosse, and the Vanderhoek Trust. The three members of GSK executed an Operating Agreement naming Sonnier as the company's sole manager. The members then transferred their respective interests in the property to GSK on November 7, 1994 in exchange for membership interests.

In August 1995, Sonnier and The Derek V. Robin Trust formed First Summit Group LLC. Attorney Dennis Doise was designated as First Summit's registered agent.

On April 30, 1996, GSK sold the property to First Summit via credit sale for $5,499,300.00. The credit sale, which granted GSK a vendor's lien on the property, was recorded in the Calcasieu Parish mortgage and conveyance records on May 6, 1996. It has never been reinscribed. The note associated with the credit sale called for payment in full on or before April 30, 2001.

The credit sale was amended on two occasions. The first amendment, dated October 16, 2001, reduced the purchase price per acre but did not affect the maturity date of the obligation. The second amendment, dated May 21, 2003, extended the maturity date of First Summit's obligation by three years, with full payment due on April 30, 2004, eight years from the date of the original sale.

In 1999, Sonnier and Roland Robin, First Summit's managers, approached Whitney Bank

2

seeking a development loan for First Summit on the property. Whitney ultimately agreed to provide financing to help develop the property, but insisted on receiving a first mortgage as security. This required a Subordination Agreement which all parties signed. In order to further add legitimacy to the Subordination Agreement, a document entitled Unanimous Written Consent of the Members of GSK LLC was obtained which required the signatures of GSK's members. (Collectively, the Subordination Agreement and the Unanimous Consent Document are hereon the "Subordination Agreement"). Once the deal with Whitney was finalized, Whitney's mortgage on the property was duly recorded in Calcasieu Parish. Whitney's loan officer, Henry Tyler, stated in his deposition that he had no knowledge of the how those documents came into existence. (See Appellee/Defendant's Motion for Summary Judgment, Exhibit 12, pg. 56). He also stated his belief that the documents were legitimate based on the presentations First Summit's attorney had made to him. (See Appellee/Defendant's Motion for Summary Judgment, Exhibit 12, pg. 57). First Summit thereafter executed collateral mortgages dated October 6, 1999 and December 23, 1999 that were duly recorded in Calcasieu Parish.

First Summit (the "Debtor") filed a petition for relief under Chapter 11 on July 20, 2006. The Chapter 11 case was subsequently converted to a Chapter 7 case. After First Summit filed for bankruptcy protection, both GSK and Whitney asserted secured claims against the debtor based on their vendor's lien and mortgage respectively. First Summit, in their adversary complaint, challenged the validity of the Subordination Agreement in Whitney's favor, asserting that the signatures of LaFosse and Vanderhoek on the Unanimous Consent Agreement were forgeries. Whitney responded by arguing, *inter alia*, that because GSK did not timely reinscribe its vendor's lien, it lost priority to Whitney as of April 30, 2006, regardless of the validity of the

3

Subordination Agreement. On January 25, 2007, Plaintiffs/Appellants filed a motion for summary judgment alleging Defendants/Appellees fraudulently obtained a subordination of the vendor's lien and privilege held by GSK in connection with the sale of family property. The Bankruptcy Court agreed with Whitney holding that GSK's vendor's lien was subordinate to the mortgage held by Whitney Bank by virtue of GSK's failure to timely reinscribe their vendor's lien. This appeal followed.

## II. Appellant's Contentions

Appellants contend that the Bankruptcy Court failed to exercise its equity powers in balancing public interest and private needs as well as competing private claims and, therefore, committed error by declaring that GSK's vendor's lien was subordinate to the mortgage held by Whitney Bank on the subject property. The single issue Appellants present to this Court for review is whether the Bankruptcy Court failed to apply its equitable tolling powers enumerated in *Young v. U.S.*, 535 U.S. 43, 122 S.Ct. 1036, 153 L.Ed.2d 79 (2002) based on the alleged fraudulent self-dealing by Mr. Sonnier. In support of their equitable tolling argument, Appellants offer the following:

Appellants contend Whitney Bank knew of Mr. Sonnier's dealing in bad faith. They further argue that Dennis Doise, the attorney who provided the title policy on behalf of Whitney Bank, was in constant communication with Whitney Bank regarding the terms and conditions of the proposed loan to First Summit and Mr. Sonnier. Appellants believe that Mr. Doise's acknowledgment under oath that the Unanimous Consent document and the Subordination Agreement bear characteristics indicating they were generated in his office amounts to

4

knowledge of the forgery which can be imputed to Whitney. Further, this knowledge allegedly served to put Whitney on notice of Mr. Sonnier's mixed loyalties between GSK and First Summit and, therefore, Whitney cannot now rely upon its failure to assure the validity of the contract.

Appellants believe that, since the full payment price of the property was never paid, GSK still has the right to dissolution of the sale and therefore maintains its priority ranking. Allegedly, full ownership of the property would not be divested unto First Summit until it had fully satisfied the debt associated with the vendor's lien, which it has yet to do. *De L'isle v. Succession of J.M. Moss*, 34 La. Ann. 164 (La. 1882). Appellants further argue that the failure to pay the purchase price for the property allegedly amounts to a failure of consideration which renders a sale null and void based on non-performance. *Moore v. Sucher*, 102 So.2d 459 (La. 1958). Additionally, but for the stay order entered by the Bankruptcy Court, GSK still has the right to executory process as the note has not been satisfied. In sum, GSK, Lafosse, and Vanderhoek believe that because a resolutory condition connected with the original sale has not been fulfilled, any rights inuring to the benefit of GSK as a result of that failure of consideration still exist.

Appellants also argue that, since Louisiana law on reinscription is effectively a tolling statute, the 10-year reinscription period should be equitably tolled pursuant to the U.S. Supreme Court's holding in *Young v. U.S.*, 535 U.S. 43, 122 S.Ct. 1036, 153 L.Ed.2d 79 (2002). Appellants suggest the U.S. Supreme Court has indicated its preference for courts, particularly bankruptcy courts, to be proactive and use the equity powers at their disposal to close unfair loopholes in the law or to correct situations of unfairness. In the *Young* case, Justice Scalia pointed out that "this Court has permitted equitable tolling in situations where the claimant has

actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 50. As such, Appellants believe this Court should apply the doctrine of equitable tolling and hold that the actions of GSK in filing suit prior to the earliest arguable date of reinscription was required amounts to substantial compliance with Louisiana law and preserves their rank and privilege.

Appellants argue the rank of GSK's vendor's lien is not extinguished until the mortgage is satisfied. This argument centers largely around the intent of registry and reinscription, namely, to put third parties on notice of prior recorded rights. Appellants cite La. Civil Code art. 3307 which states that a "mortgagee is preferred to others whose rights become effective after the mortgage becomes effective to them." Appellants believe the rank given by this article is not extinguished until satisfied or cancelled by the mortgagee. Allegedly, neither has occurred in the case at issue.

Appellants note that the multiple amendments to the mortgage created a new obligation and a new period of inscription or, at least, would place a reasonable person on notice of the existence and continued viability of the mortgage and vendor's lien. Appellants claim Whitney's knowledge of the 1996 Sale with Mortgage and vendor's lien is "obvious" by its actions requiring a Subordination Agreement. Appellants further argue the law of registry served to put Whitney on notice of GSK's prior recorded vendor's lien and, as such, it is questionable as to whether Whitney qualifies as the type of third party the registry was designed to protect – unwary third parties who rely on the registry to their detriment in the absence of records of previous mortgages. Appellants argue the lack of reinscription does not defeat the purpose of the

6

law of registry because it does not deal squarely with the allegedly questionable actions of Mr. Sonnier and the fairness of GSK's suffering because of those actions.

### III. Appellee's Contentions

Appellees argue that, even if the Subordination Agreement is invalid, GSK lost its first lien ranking when it failed to reinscribe its vendor's lien. Appellees present two issue for this Court to review: (1) Whether a bankruptcy court must apply state law to determine the relative priority of competing mortgages encumbering property of a debtor and (2) Whether, under Louisiana law, the effect of recordation of GSK's vendor's lien expired after ten years when GSK failed to reinscribe it, thereby giving Whitney's later recorded mortgage priority.

Appellees contend the relative priority of GSK's vendor's lien and the Whitney mortgage must be determined under Louisiana law. In support of this contention, Appellees contend Appellants have ignored the U.S. Supreme Court's directive in _Butner v. United States_, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed 2d 136 (1979) which states "property interests are created and defined by state law." Appellees believe _Butner_ mandates application of the Louisiana precedent for ranking competing security interests set forth in _American Nat'l Ins. Co. v. Heller Financial, Inc._, 989 F.2d 854, 586 (5th Cir. 1994) and affirmed in _Bank One Louisiana v. Lacobee_, 811 So. 2d 164, 168 (La. App. 2nd Cir. 2002). The _American_ court stated, "if a mortgage is not timely reinscribed, it becomes a nullity and no longer serves as notice to third persons. A priming position may not be maintained by an expired mortgage." _American_ at 854; LSA - C.C. art. 3369(E) (Repealed). In both _American_ and _Bank One_, judgment creditors were held to have lost priority to the subsequent mortgagees because of the judgment creditors' failure to

7

reinscribe. Appellees allege the facts of the instant appeal are no different. The effect of GSK's vendor's lien ceased on April 30, 2006, eight years after the sale of the property was perfected. GSK allegedly lost its priority to the Whitney mortgages at that moment.

Appellees argue against what the Appellants' brief terms "a hyper-technical interpretation of the law of registry and reinscription..." This argument allegedly ignores both (a) the U.S. Supreme Court's directive in *Butner* that state law alone must govern the determination of property and security interests in bankruptcy proceedings and (b) the *Bank One* requirement that the provisions of the Civil Code regarding reinscription be applied as written, regardless of any perceived inequity. Appellees note that Appellants fail to cite the Civil Code provisions on recordation and reinscription at all in their brief, nor do they mention the decisions in *American National*, *Bank One*, and *Casey v. National Info. Services, Inc.*, 906 So. 2d 710 (La. App. 1st Cir. 2005).

Further, the Appellants' dissolution argument is alleged to be fundamentally flawed as it refers to the possibility that Louisiana law might allow them to dissolve the sale from GSK to First Summit. Appellees note this reference appears to be a cause of action for recission that a credit seller may assert for non-payment of the purchase price under Louisiana Civil Code Articles 2561 and 2562. Appellees urges four holes in this argument. First, plaintiffs have not asserted the enforcement of a vendor's lien. Second, having chosen to "affirm the contract" by enforcing its vendor's lien, Appellants have foregone any possible claim for dissolution. "The two remedies are diametrically opposed." *Castle's Heirs v. Floyd*, 38 La. Ann 583 at 4 (1886). Third, on seven different occasions, of which six predated the Whitney mortgage, GSK executed partial releases of its vendor's lien that expressly waived any claim for dissolution as to the

8

released tracts. Having done so, GSK has made dissolution of its sale to First Summit impossible. See <u>Robertson v. Buoni</u>, 504 So. 2d at 862 (La. 1987) (dissolution places matters in the same state as though the obligation had not existed). Lastly, any claim for dissolution would require GSK, as a condition precedent to institution of the suit, to restore that part of the purchase price already paid, which it has not done. <u>Castle's Heirs</u> at 4.

Appellees contend Appellants' focus on Mr. Sonnier's alleged fraudulent acts are irrelevant to the instant appeal. Appellees argue there is no evidence in the record suggesting that Whitney Bank bears any responsibility for Mr. Sonnier's acts. Appellees believe the evidence before the Court demonstrates that Whitney was a third party lender with no connection to the Sonnier family's conflicts. As to the Subordination Agreement, Appellees contend Whitney was not involved in its drafting or execution. Appellees further contend the validity of the Subordination Agreement (or lack thereof) is immaterial to the instant appeal due to Appellants' failure to reinscribe their vendor's lien.

### IV.   Standard for Appeal

28 U.S.C.A. §158(c)(2) provides that this Court should review the bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact de novo. Accordingly, this Court should review de novo the Bankruptcy Court's grant of a Motion for Summary Judgment in favor of Appellees. <u>OCA, Inc. v. Hassel</u>, 2008 WL 695041 (E.D. La. 2008).

## V.  Analysis

### A.  Recordation and Reinscription of Mortgages Under the Louisiana Civil Code.

The Louisiana Civil Code provisions governing the recordation and reinscription of mortgages were repealed and re-codified effective July 1, 2006. Given this effective date, the repealed codal provisions governing recordation and reinscription were in force when the recordation of GSK's vendor's lien lapsed in April 2006. The applicable codal provisions in effect prior to July 2006 were contained in Articles 3328-29, 3333-34, and 3362 (repealed). Articles 3328-29 (repealed) provided that, with respect to an obligation that matures less than nine years after the date of the document, "the effect of recordation ... ceases ten years after the date of the document." These provisions are now codified in Articles 3357-58. The effect of recordation could be extended for an additional ten years by filing a notice of reinscription under Articles 3333 and 3334 (repealed), which are now re-codified in Articles 3362 and 3364. Courts have consistently held that the failure to reinscribe a mortgage under the Civil Code causes the mortgage to lose its priority. *American Nat'l Ins. Co. v. Heller Financial, Inc.*, 989 F.2d 854, 586 (5th Cir. 1994); *Bank One Louisiana v. Lacobee*, 811 So. 2d 164, 168 (La. App. 2nd Cir. 2002); *Casey v. National Info. Services, Inc.*, 906 So. 2d 710, 715-16 (La. App. 1st Cir. 2005).

### B.  Did GSK's Vendor's Lien Lose Priority Over Whitney's Mortgage?

Applying the Civil Code's recordation and reinscription provisions to the present case, the summary judgment record establishes that the recordation of GSK's lien lapsed in April 2006 when GSK did not file a notice of reinscription. The Credit Sale Documents were executed on April 30, 1996. Based on these documents, the underlying obligation originally matured on April 30, 2001 - five years from the date that the Credit Sale Documents were executed. The Credit

10

Sale Documents were subsequently amended to extend the maturity date to April 30, 2004 - approximately eight years after the Credit Sale Documents were originally executed. Based on the applicable provisions of the Civil Code in force at the time, the effect of the recordation of GSK's vendor's lien would have lapsed on April 30, 2006 unless the lien was duly reinscribed. See La. Civ. Code Arts. 3328-34 (repealed). It is undisputed that GSK did not reinscribe its vendor's lien pursuant to Louisiana Civil Code Art. 3362 (repealed). As a result, GSK's 1996 recordation lapsed in April 2006, at which time GSK's vendor's lien lost its priority status vis-a-vis Whitney's subsequently recorded mortgage. *American Nat'l Ins. Co.*, 989 F.2d at 856; *Bank One Louisiana*, 811 So. 2d at 168.

### C. Appellant's Interpretation of the Law of Registry

Appellants contend that the Civil Code's recordation and reinscription provisions merely serve to provide notice to third parties and cannot divest GSK of any substantive rights afforded by its vendor's lien. Appellants are correct that the Civil Code's recordation and reinscription provisions do not address the underlying validity of a lien, and that GSK may still have a valid lien; however, Appellants' argument confuses lien validity with lien ranking. While the Civil Code does not strip GSK's vendor's lien of its validity, the failure to reinscribe the lien caused the lien to lose its priority ranking. The *American Nat'l Ins.* case illustrates the effect of a lapse in recordation under the Civil Code. In that case, the appellant held a first priority mortgage on certain tracts of land. The mortgage was executed and recorded in April 1977, but the appellant never reinscribed its mortgage before the 10-year recordation period lapsed. In September 1979, the appellee was granted a second mortgage on the same property. The appellee duly reinscribed its second mortgage in August 1989. The Fifth Circuit subsequently held that the appellant lost

11

the priority ranking of its lien when it failed to reinscribe the lien. In short, regardless of the underlying validity of GSK's lien, the lien lost its priority ranking vis-a-vis Whitney when the recordation of the lien lapsed in April 2006.

### D. Appellant's Dissolution Argument

Appellants contend that Whitney's mortgage is defective as a result of GSK's perceived right of dissolution. Under Louisiana law, a seller has a right of dissolution when the buyer fails to pay the price of a credit sale. See <u>Robertson v. Buoni</u>, 504 So. 2d 860 (La. 1987). Appellees respond by pointing out that Appellants have not asserted a claim for dissolution, nor have they satisfied the requirements for dissolution, including restoration of the portion already paid by the buyer. The Court agrees with Appellees in this regard. A cause of action for dissolution is entirely separate and distinct from the issue of lien ranking. The Appellants' own brief acknowledges that "GSK's right as vendor to a dissolution of the sale for failure of consideration is not dependent upon the existence of any security device..." (See Appellants' Brief at 12). Simply stated, GSK's right to dissolution is not germane to the ranking of its lien, or how the lapse of the lien's recordation effects its ranking.

### E. Appellant's Amendment Argument

Appellants contend the multiple post-1996 amendments to the original Credit Sale Documents "either create a new obligation and a new period of inscription or, at the very least, place a reasonable person on fair notice of the existence and continuing viability of the mortgage and the vendor's lien - exactly what the public records law intended to do" (See Appellants' Brief at 17). Under the Civil Code, amendments to the original documents will impact the recordation period only if they extend the maturity date of the underlying obligation beyond nine years. See

12

La. Civ. Code Art. 3361 (repealed). If the maturity date remains less than nine years, the recordation period is ten years measured from the date of the original documents. In the present case, the amendments cited by Appellants extended the maturity date; however, the extended maturity date was still less than nine years. Accordingly, under the clear language of the Civil Code, GSK's 1996 recordation expired ten years from the date of the original Credit Sale Documents in April 2006. The Court agrees with Appellants in that the filing of amendments in the registry serves to place third parties on notice of the continued viability of mortgages and vendor's liens; however, this fact is irrelevant for purposes of the instant appeal. GSK's failure to reinscribe is fatal to Appellants' claim regardless of whether or not Whitney had knowledge of GSK's prior recorded security interests prior to perfection of Whitney's mortgage.

### F. Did the Bankruptcy Court commit error if failing to apply the principles of *Young v. U.S.*, 535 U.S. 43, 122 S.Ct. 1036, 153 L.Ed.2d 79 (2002)?

Appellants contend that since Louisiana law on reinscription is effectively a tolling statute, the principle of equitable tolling, as defined by the U.S. Supreme Court in *Young v. U.S.*, is applicable to the instant appeal. Appellants argue that, even if recordation lapsed in April 2006, the Civil Code's reinscription requirement was equitably tolled because of allegedly fraudulent conduct attributed to Mr. Sonnier. Appellants also contend that they "substantially complied" with the Civil Code's reinscription requirements by filing suit against Sonnier and First Summit in state court prior to the deadline for reinscription of the vendor's lien.

The facts in *Young* are not analogous to the facts of the instant appeal. The plaintiff in *Young* ("the debtor") filed two bankruptcies (Chapters 13 and 7, in that order) within a six year period. These successive bankruptcies allowed her to discharge her debt to the IRS for a period

13

greater than the three-year look back period the IRS uses when attempting to collect taxes from debtors. "The terms of the look back period...created a loophole. The (Bankruptcy) Code does not prohibit back-to-back Chapter 13 and Chapter 7 filings (as long as a debtor did not receive a discharge under Chapter 13). A debtor can render a tax debt dischargeable by first filing a Chapter 13 petition, then voluntarily dismissing the petition when the look back period for the debt has lapsed, and finally refiling under Chapter 7." See *Young* at 46. The three year look back period allowing the IRS to collect taxes against Young was tolled during the pendency of Young's earlier Chapter 13 proceeding, while automatic stay (from the pending Chapter 7 proceeding) prevented the IRS from taking collection action. Subsequently, the Supreme Court held the three year look back period was a limitations period subject to traditional principles of equitable tolling. Judgment was rendered in favor of the IRS, thereby precluding Ms. Young from discharging her tax debts for a period of time longer than three years. Appellants now ask this Court to declare the ten year reinscription period a limitation period subject to the same principle of equitable tolling as invoked by the Supreme Court in *Young*.

In *Young*, Justice Scalia pointed out that the Court "has permitted equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." See *Young* at 50.

It is clear that the factual situation permitting equitable tolling in *Young* is of a completely different nature than the factual situation surrounding the equitable tolling sought by Appellants in the instant appeal. First, the summary judgment record does not establish the utilization of a loophole in the Louisiana Civil Code by Appellees. In *Young*, the Plaintiff cheated the IRS by

14

filing successive bankruptcies in order to defeat the three year look back period. No such loophole existed in the instant matter. Secondly, the summary judgment record does not establish evidence of the Appellants being induced or tricked by the Appellees to allow the *reinscription* deadline to pass. The Appellants would have this Court believe that Mr. Sonnier's alleged fraudulent conduct regarding the Subordination Agreement somehow rises to the level of trickery as contemplated in *Young*. To the contrary, the summary judgment record before the Court demonstrates that Whitney was a third party lender with no connection to Mr. Sonnier's alleged fraud.

Appellants also offer the Fourth Circuit case of *Tidewater Finance Company v. Williams*, 498 F.3d 249 (4th Cir 2006). Appellants presumably cite *Tidewater* to show that the district courts have, at least, addressed the application of equitable tolling based on equity principles in the past. Though this Court need not follow Fourth Circuit precedent, the Court finds that the precedent in *Tidewater* is fatal to Appellants' argument. In *Tidewater*, a finance company (Tidewater) filed suit against a debtor who allegedly defaulted on his car loan secured by Tidewater. Tidewater subsequently asked the court to invoke equitable tolling based on their perceived unfairness of the defendant/debtor's alleged neglect to pay his car loan timely. The *Tidewater* Court denied Tidewater's application for equitable tolling finding Tidewater had simply forgotten or otherwise neglected to attempt to collect their debt within the applicable time period. In other words, there existed no loophole and, therefore, no "unfairness" as contemplated by the Supreme Court in *Young*. Like the plaintiff in *Tidewater* who simply failed to collect their debt timely, the Appellants in the instant appeal neglected to timely reinscribe their vendor's lien. The Supreme Court has stated that "one who fails to act diligently cannot invoke equitable

principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984). Such is exactly the case in the instant appeal.

Though the summary judgment record may be illustrative of Mr. Sonnier's alleged fraudulent conduct, that conduct, even if proven to be true, does not change the fact that the Appellants failed to timely reinscribe their vendor's lien. Even if the type of equitable tolling contemplated by the *Young* court was available, the summary judgment record fails to provide this Court with a scintilla of competent evidence supporting Appellants' allegations that Whitney and Gary Sonnier participated in fraudulent conduct which, in turn, induced or tricked Appellants into allowing the reinscription deadline to pass. Based on the summary judgment record, the Appellants had no relationship or dealings with Whitney in connection with the First Summit development financing agreement or to the Sonnier family's conflicts. While Appellants point to evidence in the summary judgment record supporting their allegations of wrongful conduct against Sonnier, they failed to come forward with any competent summary judgment evidence supporting fraudulent conduct on the part of *Whitney*. Even if Whitney knew that Sonnier had an interest in both GSK and First Summit, this knowledge does not rise to the level of fraud. Nor can the Appellants successfully impute Sonnier's allegedly fraudulent intent to Whitney absent evidence in the record showing some involvement by Whitney in the allegedly fraudulent scheme attributed to Sonnier. Simply stated, even if Appellants had come forward with summary judgment evidence supporting a fraud claim against Sonnier, they could not convert a fraud claim against Sonnier into a fraud claim against Whitney. While this evidence may support a claim against Gary Sonnier personally, it does not support Appellants' lien ranking claim against Appellees.

### G. The Bankruptcy Court did not commit error in failing to apply the equitable tolling principles of *Young v. U.S.*

For the aforementioned reasons, the doctrine of equitable tolling enumerated in *U.S. v. Young* is inapplicable to the instant appeal. As such, the Court adheres to the Louisiana Civil Code in order to resolve this appeal. The Civil Code provisions in effect at the time clearly stated that the reinscription procedures set forth in the Code are "exclusive." La. Civ. Code Art. 3363 (repealed). Based on the applicable provisions of the Civil Code in force at the time, the effect of the recordation of GSK's vendor's lien would have lapsed on April 30, 2006 unless the lien was duly reinscribed. See La. Civ. Code Arts. 3328-34 (repealed). It is undisputed that GSK did not reinscribe its vendor's lien timely pursuant to Louisiana Civil Code Art. 3362 (repealed). As a result, GSK's 1996 recordation lapsed in April 2006, at which time GSK's vendor's lien lost its priority status *vis-a-vis* Whitney's subsequently recorded mortgage. *American Nat'l Ins. Co.*, 989 F.2d at 856; *Bank One Louisiana*, 811 So. 2d at 168. Accordingly, the Bankruptcy Court's judgment granting Appellee/Defendant's motion for summary judgment was correct. Given that GSK's failure to reinscribe is dispositive, the Court need not address the parties' arguments pertaining to the Subordination Agreement.

## VI. Conclusion

For the reasons set forth above the Appellants' Bankruptcy Appeal [Court Doc. 1] is **DENIED** and the judgment of the Bankruptcy Court is **AFFIRMED**.

THUS DONE AND SIGNED in Lafayette, Louisiana, on the 21st day of May, 2009.

*[signature]*
CHIEF JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA